Due to technical difficulties, the entirety of this recording is unavailable. The Honorable the Judges of the United States Court of Appeals for the Fourth Circuit. Good morning, please be seated. All right. We're prepared to hear argument in Brown Goldstein Levy v. Federal Insurance Company. And Mr. Richards, happy to hear from you. Good morning, Your Honor. My name is John Richards, and I have the honor of representing Brown Goldstein Levy and Joshua Treem in this appeal from the dismissal of their insurance coverage action under 12b6. This case arises from the failed prosecution of Joshua Treem that began with the issuance of, first, a subject letter in January of 2019 calling for his withdrawal as counsel for his client, second, a request for a search and a seizure warrant, third, the execution of that search and seizure warrant, followed by a successful appeal to this Court, fourth, a target letter denominating Mr. Treem as a target of a criminal investigation, and fifth, further written demands that Treem either withdraw from representation of other clients or obtain in-court waivers by his clients in order to continue to represent them. This case is about the denial of coverage provided by the Chubb Pro-Lawyers Professional Liability Policy issued to this prominent criminal defense firm in Baltimore that paid over $100,000 for it. So what do you think is your strongest argument that there was a claim here that fell within the insurance policy? Well, Your Honor, I think the search warrant is obviously a claim. Obviously? Directed to Brown Goldstein and Levy. No. Directed to law enforcement officers. The warrant is directed toward law enforcement officers, not to Brown Goldstein. So that was the place to be searched, but the warrant is directed to the law enforcement officers. And just to seize records of the insured. But how do you deal with a language, a written request or demand against an insured? Your Honor, it was taking the insured's documents. That is against the insured. It was alleging that the insured, Mr. Treene It's adverse to, it's adverse, the search warrant is certainly adverse to the insured, but the question is whether it's a written request or a demand against the insured. And Your Honor, in this case, we have a history of litigation back and forth where multiple federal judges have reviewed this language and concluded that a search warrant is seeking relief against the insured. That was the protective services case, the two judges in the Agilis case, all of which found that a search warrant I know, but the courts are all over the place on this to a degree, and there are an awful lot that it found otherwise. Which is exactly our point, Your Honor, because if it's a reasonable interpretation, and we submit that if three federal judges I know disagreement doesn't necessarily imply ambiguity, and we get this argument in contract cases all the time. Well, the parties disagree or whatever, or there's disagreement here among the courts that must mean ambiguity. I'm not sure. Well, Your Honor, as I say, I think under Maryland law, one is supposed to look to that as a factor in determining whether it is ambiguous or not, and there's a Don't you have to jump over the text in order to get to the ambiguity? Well, Your Honor, in this case, you don't really have to jump over the text at all. Unfortunately, the district court chose to rewrite the policy by adding the word civil into the text of this policy. There was no basis for it to do that. Judge Keenan has a question for you. Yes. Thank you, Judge Wilkinson. Mr. Richards, I'm concerned that you haven't accounted in the definition of claim the language for a wrongful act. So it's not just non-monetary relief against an insured, the request, but it has to be a request based on a wrongful act of the insured. Yes, and here we have that in spades, Your Honor. We have both a subject letter saying you are a subject of a criminal investigation. We have a target letter saying we have concluded that you're a target of a criminal investigation. The actual search warrant application goes into detail describing the wrongful activities that they're going to investigate with this search warrant. And then they ultimately indicted Mr. Treene. So I don't think there's any question that wrongful act is all over this one. I know lots and lots and lots of the cases in this case are distinguishable because courts have found no wrongful act here. But doesn't the relief have to be tied to the wrongful act? In other words, you're getting the relief to compensate you for your wrongful, for the wrongful act. And that, to me, suggests the disconnect because you don't have relief that is being sought that would compensate the wrongful act. You see what I'm saying? There's an accusation of a wrongful act, but it has to be a wrongful act of the insured that entitles the opposing party to relief. And I don't see how you've tied relief in the classic legal sense. It seems to me, and then I'll be quiet, but if you could tell us how your interpretation of relief, it seems to me, suggests anytime somebody's asking you for something, that's a request for relief. Relief usually has a distinct meaning, as Judge Johnson said in his opinion, has a distinct meaning in the legal world. It's not just asking for something. So how do you narrow that? So, Your Honor, actually, that brings me to a point that I particularly noticed in preparing for this hearing today, and that is on page 16 of the appellee's brief, they cite two cases together which I think highlight why this analysis by the district court is wrong as a matter of Maryland law. The first case they cited was Maryland Casualty v. Armco, which is a decision by this Court predicting Maryland law. And there, this Court did exactly what the Court here has done, which it went and said that the best approach to construing the term, damages in that case, contained in this insurance contract is to afford it the legal technical meaning. But the next case in this citation is to Bosch and Lohm, which is the Maryland Court of Appeals, now Supreme Court. And there, they rejected this Court's prediction of Maryland law expressly. They said, to the extent it imports a distinctly legal meaning in insurance matters, Armco misperceives the law of Maryland. And it goes on to say, the terms of an insurance contract are to be construed according to the meaning a reasonably prudent layperson would infer. And, Judge Keenan, I suggest that most of these cases that have gone off and said, oh, well, a subpoena isn't a request for a relief, all those, they're going to, you know, technical black-slit legal dictionary definitions for relief to justify that reading. And that's the exact type of analysis that's been rejected by the Court in Maryland. The Court in Maryland wants you to look at what a normal person would understand. And we suggest that a normal person would understand that when the government has gone, gotten a judge to grant the relief, grant a writ, allowing them to come into your offices and seize your documents, that is relief. That is a demand for relief, and it's been given, already been given by the Court. Your options at that point are under Rule 41 to go back into court and try to get some relief back from the Court, which, in this case, the District Court somehow thought was some thing, you know, that you didn't really have to do, even though, as we all know, our legal ethics obligations in this Court held that they really had no alternative but to go and seek relief. One of the arguments your opponents make is that the definition of claim, when it's true that the section that we're talking about here, written demand or written request, is not limited. That doesn't have the civil language that the other definitions of claim, but I'm not sure that gets you home free because, you know, there's an old principle of statutory interpretation that a word is known by the company it keeps, and the company that this definition keeps is civil company, and it's sort of odd looking at the definition of claim as a whole to think that everything else is dealing with a civil process, and then suddenly we jump to criminal procedure without any explicit signal that we're doing so. And so, if you take the total landscape of it, the total context of it, it seems to me that the association that your provision has is a civil association. Well, Your Honor, I think that is expressly rejected in the authorities that we have cited. I frankly had never known about Justice Scalia's book before I started reading the cases in this appeal, but the Maryland Court of Appeals has, you know, both quoted it and relied on it for exactly this point, that, oh, no, the or means forget all of that. That's different. That's disjunctive. You're not supposed to read those together. And then there are several other, you know, basic canons of construction, including, most importantly, the way this case that they're citing that says, you know, in support of this jusem generis argument, you know, is leading off with that, saying any of the following. There could be no clear expression in English that those subclauses separated by semicolons, which, you know, to criminal process or demands for relief in criminal process. And I think I could see my way there in the case even more easily in the case of a subpoena. A subpoena ducis tecum is at least a written demand made upon the insured, whether it's a, to follow up on what Judge Keenan was saying, I'm not sure it's a demand for relief. In other words, the problem you have, I think, with your definition is that there are three elements to it, at least. One of the elements is that it has to be in writing. Another element is that it has to be a demand for relief. And another element is that it has to be against the insured. And whereas I think you might get somewhere with the first item and the first element, which is that it is written, I'm not so sure that you do, you fare as well with the other elements. I'm not sure that it's a claim against or a demand against the insured. I'm not sure that it is a request for relief. And it seems to me that you have a number of hurdles to satisfy all the elements in that definition. So why don't you, you can respond to that, of course, and you've got some time for rebuttal, but we've given you some extra time. Thank you, Judge. Why don't you come back and give this a rebuttal? Very well. Thank you. All right. Ms. Wellington. Can't please the Court. Katie Wellington on behalf of Federal Insurance Company. To win on appeal, appellants have to run the tables. They have to show that the expenses they ask Federal to cover meet both the definition of a claim and the definition of a loss. But court correctly and persuasively explained under the plain text of the contract, a search warrant isn't a claim because the contract doesn't cover criminal proceedings, nor is a search warrant against an insured. It isn't against anyone at all. It directs a law enforcement officer to search a place and seize a thing. And a search warrant isn't a form of relief. It's the government's investigation of a potential crime. The expenses appellants seek related to the search warrant aren't for defense costs. They're for affirmative relief that they chose to seek in court. The same is true of appellants' request for reimbursement related to the conflict letters. Those letters don't make a claim, and appellants don't seek defense costs. The conflict letters simply apprised appellants of the government's position, which appellants did not dispute. This Court should affirm. So I wanted to start with the warrant issue, and in particular, the issue that you guys, that the Court has raised, that this wasn't a claim against an insured. And this is a longstanding principle. This isn't a technical question of what a search warrant is. It's what a search warrant has always been. The U.S. Supreme Court explained in the Zurcher opinion and in the Anderson opinion that search warrants aren't against a defendant. And this is an incredibly important point because in the context of the Fifth Amendment, the right against self-incrimination, if a search warrant was against a defendant, then those documents couldn't be introduced into court. So the defendant is not particularly pleased if a search warrant has been issued. That's correct, Your Honor, but that's not the question here. The question here is, is the search warrant against an insured? If you look at the plain text of the warrant, that's at JA-53. It commands authorized law enforcement officer to search and seize property. It's not a... But do you, with respect to the point I was making about this being possibly confined to civil cases, I don't think that's your most important point, but aren't there some applications of this provision in the criminal justice process? For example, if the insured received a subpoena, wouldn't that still be covered by the policy, even though it was a criminal matter? So that wouldn't raise the same question we're talking about here. It would be against an insured, but we don't think it would meet the definition of a claim because... I'm asking you, how would you come down on the question of the subpoena? So we don't believe subpoenas would be covered under this definition of claim. Now, there's a separate subpoena enhancement in this contract that does cover subpoena-related costs, but the definition of a claim here very clearly refers to civil proceedings if you apply the Noskiter Associates canon, which is applied under Maryland law. And you look at each part of this definition of claim. First, you have a written demand or written request for monetary damages. That's a form of civil relief. You have a written demand for arbitration. That's a civil proceeding. You have a formal administrative or civil regulatory proceeding, and you have a civil proceeding. All of that talks about civil proceedings. Under Maryland law, you apply, you look at the contract as a whole, and you apply canons of interpretation, including Euston-Generis and Noskiter Associates. And the government employee's insurance case, this is cited on page 19 of our brief, that's a Maryland case, it applies the Euston-Generis canon in a contract that uses a disjunctive or, and where the term you're trying to interpret is at the beginning rather than at the end of the particular provision at issue. So I think under Maryland law, you do look at this, all these terms together, and the only conclusion here is that criminal proceedings aren't covered. So we don't think a criminal subpoena would be covered here under the definition of claim. We also don't think that you need to reach that in order to decide this case. But there's no exclusion in this definition of claim of the criminal justice process? There's no express ex- You're the one that wrote the policy. So under Maryland law, you don't use exclusions to interpret the scope of coverage. You look at the text of the coverage provision itself, and you apply these ordinary canons of interpretation. So we think that criminal proceedings are excluded. But even if you disagreed with that point, we think it's still not covered because a search warrant isn't against an insured, because it's not seeking relief for a wrongful act. This goes to your question, Judge Keenan. The search warrant isn't seeking some kind of remedy based on the claim here, which is an obstruction of justice claim, an allegation, and instead, it was simply seeking information to investigate what was going on in those criminal proceedings. So we don't think, for several different reasons, that it meets the definition of a claim here. Maybe your point is stronger with respect to the words demand and relief than it is with respect to the word against. Because they are, you know, the officers and the insured are obviously pitted in an adversary situation. So we think the question is, is the search warrant against the law firm? Is it against the criminal defendant or someone who's about to get indicted? And under longstanding Supreme Court precedent, under the basic understanding of the search warrant, under the plain text of the search warrant in the record here, we don't think that it was against the insured here. And that's the relevant question. We also don't think that the costs that were expended here were defense costs. They came into court and requested affirmative relief with respect to a particular privilege review process. That's similar to a countersuit or, you know, with Garcia case held, that a motion under Rule 41G for return of property. Now, counsel, I think maybe at this point, it's good just to see if the panel has some questions of you with respect to the points you've been making. Judge Sackler, do you have any? I do not. Judge Keenan, do you have any questions? No, thank you. All right. I have no questions. So thank you very much. Thank you. All right. Mr. Richards, we've mentioned that you had some time in rebuttal. Thank you very much, Your Honor. In terms of whether it was against Brown, Goldstein, Leiby, and Joshua Treene, it was against it enough for this Court to find that we were being irreparably harmed and reversing the search warrant order. So clearly, we — it was against us, and we had standing to challenge it. We did challenge it, and we challenged it according to the rules. That was not some sort of voluntary, you know, oh, my goodness, I went out and filed a lawsuit against somebody. We had been — The problem is it was not a written demand against the insured. It didn't require the insured to do anything. The insured could have just sat there. I respectfully disagree, Your Honor. I think that, as have any number of other courts, we believe that it was a demand to — I know you believe that, but you're not — you're not showing me, you know, it's — you're not showing me where the written demand on the insured is. Well, in addition to the search warrant, if you choose to disregard the search warrant, there were the demands that Joshua Treene stop representing his clients and that he, you know, come into court and get, you know, formal waivers if he continued to represent them. Those were clearly written demands to him requiring him to take action. Your Honor, when we broke before, you had been asking a question about subpoenas. And I think one of the things that — and we spent a lot of time talking about subpoenas here, but this very insurance company, this litigant, had previously litigated that issue in Maryland, and Judge Motts ruled that a subpoena was — AG subpoena was covered under this exact language. So it was not excluded because it wasn't civil. Where is the demand language in the letter about the conflict? That's the January 11th, 2019 letter. It says, we write to advise you, and then it closes with, please advise us promptly. Is that the demand, please advise us promptly? I think a normal layperson would understand that when a prosecutor says, you know, you are disqualified, let me know if you're not going to do this. That's a demand. Yes, I do think that. A demand to do what? To withdraw as your counsel for the person that you have been representing. You know — That's a quite polite demand letter. There are lots of very polite demand letters, Your Honor. But, you know, I think fundamentally our point comes down to this. Under the McDonnell case, which is the controlling case in the Court of Appeals, now Supreme Court of Maryland, an insurer must use clear and unambiguous language to distinctly communicate the nature of any limitation on coverage to the insurer. Here we have a situation where they've known before, because they litigated and lost the subpoena issue two years before they issued this policy, and didn't go and change the policy to insert only civil for, you know, more, you know, nonmonetary relief. No. They litigated it. They lost. And yet they would like this Court to affirm, based on the notion that, oh, no, it's only civil, no criminal coverage that we sold to this criminal defense firm. I think that is — falls well within a reasonable reading by a layperson to think that this clause, which has been repeatedly found to cover search warrants, indictments, target letters, this Court found in the Bornstein case that a target letter was requesting relief. There's no real response to that. We got a target letter, and — Yeah, but the search warrant is what's at the heart of this case, and the Bornstein case did not deal with a search warrant. The search warrant has certainly been the, you know, heart of much of the briefing in the case. The search warrant is at the heart of the argument here, and the Bornstein case didn't involve that. It did not involve a search warrant. You're right. All right. Well, thank you, sir. Thank you very much, Your Honor. For COVID reasons, I'm not shaking hands this morning, but that doesn't mean I'm any less appreciative of your good argument. We will thank Judge Keenan for sitting in with us, and we will take a brief recess and reconstitute the panel. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Stephanie D. Thacker, Barbara Milano Keenan